**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **JOSEPH JAMES FALCETTA, JR.,** | § | |
| *Petitioner* | § | |
| | § | **A-22-CV-524-LY-SH** |
| **v.** | § | |
| | § | |
| **G. ROSALEZ, WARDEN,** | § | |
| *Defendant* | § | |

**AMENDED REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   **THE HONORABLE LEE YEAKEL
       UNITED STATES DISTRICT JUDGE**

Before the Court is Petitioner Joseph James Falcetta, Jr.'s Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, filed May 27, 2022 (Dkt. 1), and Petitioner's Motion to Amend Filing, filed October 5, 2022 (Dkt. 18).[1] On September 21, 2022, the District Court referred this case to the undersigned Magistrate Judge for an amended report and recommendation, pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, and the Court Docket Management Standing Order for United States District Judge Lee Yeakel. Dkt. 17.

**I.   Background**

**A.  Convictions and Sentences**

On November 7, 1996, in Smith County, Texas, Falcetta and "his partners in crime" attempted to carjack a shuttle bus transporting Texans to a casino in Louisiana. *Falcetta v. United States*, No. 20-50247, 2021 WL 5766571, at *1 (5th Cir. Dec. 3, 2021). Falcetta and his coconspirators

---

[1] In his Motion to Amend Filing, Falcetta seeks leave to file a supplemental brief. This Motion (Dkt. 18) is **GRANTED**.

boarded the bus armed with short-barreled shotguns "with the intent to cause death and serious bodily harm" and steal the bus. Dkt. 14-1 at 11. Texas sheriffs' deputies arrested Falcetta and his coconspirators on November 8, 1996, and charged them with attempted murder and aggravated robbery. *Id.*

On December 3, 1996, a United States grand jury in the Eastern District of Texas indicted Falcetta for armed robbery of a motor vehicle, also known as carjacking, in violation of 18 U.S.C. §§ 2119 and 2 (Count 1); possession of a firearm during a crime of violence and aiding and abetting, in violation of  18 U.S.C. §§ 924(c)(1) and 2 (Count 2); and two counts of possession of a short-barreled shotgun during a crime of violence and aiding and abetting, in violation of 18 U.S.C. §§ 924(c)(1) and 2 (Counts 3 and 4). *United States v. Falcetta*, 6:96-CR-00059 (E.D. Tex. Dec. 3, 1996), Dkt. 14-1 at 12.

On December 9, 1996, while Falcetta remained in the custody of the State of Texas, United States Marshals executed a Writ of Habeas Corpus Ad Prosequendum and took Falcetta into federal custody. Dkt. 14-1 at 19. Falcetta pled guilty to Counts 1 and 4 of the Indictment. *Id.* at 26. On June 27, 1997, the United States District Court for the Eastern District of Texas sentenced Falcetta to (1) a 71-month term of imprisonment on Count 1; and (2) a 120-month term on Count 4, "to be served consecutively to the term imposed on Count 1 to the extent necessary to produce a total of 191 months." *Id.* at 27. The Judgment was silent with respect to Falcetta's pending state sentence. *Id.*

On September 3, 1997, Falcetta was returned to the custody of the State of Texas. *Id.* at 21. Falcetta pled not guilty to his state charge of aggravated robbery and proceeded to trial in the 241st Judicial District of Smith County, Texas. *Id.* at 35. On December 18, 1997, the jury convicted Falcetta of aggravated robbery and sentenced him to 44 years imprisonment in the Texas

Department of Criminal Justice-Institutional Division. *Id.* at 35-36. The state district judge entered a final judgment ordering Falcetta's sentence to commence that day, and that he be granted credit for 406 days served. *Id.* at 37.

In April 2016, while Falcetta was still serving his state sentence in state custody, Falcetta submitted a request to the Federal Bureau of Prisons ("BOP") to have his federal sentences run concurrently with his state sentence. *Id.* at 47. The BOP then asked the sentencing court its position as to whether Falcetta's federal sentences should run concurrently with or consecutively to his state sentence. *Id.* at 48. On November 22, 2016, the District Judge recommended that Falcetta's 71-month sentence under 18 U.S.C. §§ 2119 run concurrently with his state sentence but his 120-month sentence under 18 U.S.C. § 924(c)(1) run consecutively, pursuant to the terms of the statute. *Id.* at 51-52. *See* 18 U.S.C. § 924(c)(1)(D)(ii) (providing that "no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person"). After consideration of the sentencing court's recommendation, the BOP retroactively designated the State of Texas as Falcetta's place of service for his 71-month federal sentence. Dkt. 14-1 at 58.

On February 1, 2019, Falcetta was paroled from his state sentence and transferred to federal custody. Because Falcetta spent more than 71 months in state custody, his 71-month concurrent federal sentence "had been absorbed by the state sentence he was then serving, and was deemed served and discharged as of that date." *Id.* at 4. Thus, Falcetta had only his 120-month federal sentence to serve. *Id.* at 60-63.

Falcetta is currently incarcerated at the Federal Correctional Institute in Bastrop, Texas. The BOP has calculated his projected release date to be August 10, 2027. *Id.* at 5.

**B. Federal Appeals**

Falcetta filed a direct appeal of his federal conviction and sentence, which was denied by the Fifth Circuit Court of Appeals. *Falcetta v. United States*, No. 6:09-CV-176, 2009 WL 1457041, at *1 (E.D. Tex. May 21, 2009). He then filed a motion to vacate under 28 U.S.C. § 2255, which was dismissed with prejudice. The Fifth Circuit affirmed the dismissal and denied a certificate of appealability. *Id.* Falcetta has filed a number of successive § 2255 petitions, all of which have been dismissed for failing to receive permission from the Fifth Circuit to file a successive petition. *Id.*

Falcetta also has filed several habeas corpus petitions under 28 U.S.C. § 2241, arguing that his sentences should be served concurrently and that the BOP failed to calculate his sentences properly. All of these petitions have been denied or dismissed for lack of jurisdiction and the denials affirmed by the Fifth Circuit.[2] *See, e.g.*, *Falcetta v. United States*, 155 F. App'x 762 (5th Cir. 2005) (rejecting Falcetta's arguments that his federal sentence should have run concurrently with his state sentence under U.S.S.G. § 5G1.3(b), his sentences cannot run consecutively under 18 U.S.C. § 3584, and the federal sentencing judge did not intend for his sentences to be consecutive); *Falcetta v. United States*, 403 F. App'x 882, 883 (5th Cir. 2010) (dismissing Falcetta's appeal as "frivolous" and "an abuse of the writ" where he raised previously rejected argument that his sentences should be served concurrently); *Falcetta v. United States*, 734 F. App'x 286, 287 (5th Cir. 2018) (holding that "dismissal for lack of jurisdiction was appropriate because Falcetta failed to show that he exhausted his sentencing credit claim fully through the multi-step BOP exhaustion procedure prior to filing his § 2241 petition"); *Falcetta*, 2021 WL 5766571, at *1 (affirming dismissal of challenge to BOP's calculation of sentences for failure to exhaust administrative remedies).

---

[2] One of Falcetta's appeals remains pending. Case No. 6:96-CR-00059-JDK-KNM at Dkt. 301.

### C.  Section 2241 Petition

Falcetta filed the instant Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 on May 27, 2022. Dkt. 1. In his Petition, Falcetta argues that the BOP has improperly calculated his sentences, the BOP's administrative review process is unconstitutional, and his conviction under 18 U.S.C. § 2119 should be vacated because the statute is unconstitutional.

On August 6, 2022, the undersigned Magistrate Judge issued a Report and Recommendation ("R&R") to the District Court recommending that Falcetta's § 2241 Petition be dismissed for lack of jurisdiction. Dkt. 7. Specifically, the Court found that Falcetta's collateral challenge to his carjacking conviction under 18 U.S.C. § 2119 was outside the proper scope of § 2241 and that the Court lacked jurisdiction to construe the petition as a § 2255 petition because the Fifth Circuit had not granted Falcetta authorization to file a successive § 2255 petition. *Id.* at 4. The Court also found that it did not have jurisdiction to review Falcetta's sentencing computation claims because he failed to state in this Petition that he had exhausted all administrative remedies with the BOP. *Id.*

Falcetta filed objections to the R&R, contending that "the exhibits attached to the Petition clearly show that the Administrative Remedies were in fact exhausted" as to his sentencing computation claims, and that his claim that his carjacking conviction should be vacated was a proper claim to be adjudicated by this Court. Dkt. 11 at 1. The Government filed a Response in Support of the R&R, arguing that the R&R correctly found that the Court did not have jurisdiction to address Falcetta's collateral attack on his conviction. Dkt. 14 at 1. While the Government "does not dispute Petitioner's new statement that he exhausted his administrative remedies," it argues that "Petitioner's habeas petition is without merit because Bureau of Prisons properly calculated his length of sentence." *Id.* at 1, 6. On September 21, 2022, the District Court referred Falcetta's § 2241 Petition for an amended report and recommendation.

## II.   Legal Standards

A petitioner may seek habeas relief under 28 U.S.C. § 2241 if he or she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A prisoner bringing a § 2241 petition is limited to attacking "the manner in which a sentence is carried out or the prison authorities' determination of its duration, and must be filed in the same district where the prisoner is incarcerated." *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000).

A federal prisoner filing a § 2241 petition "must first pursue all available administrative remedies." *Gallegos-Hernandez v. United States*, 688 F.3d 190, 194 (5th Cir. 2012). "Exceptions to the exhaustion requirement are appropriate where the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action." *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994). Exceptions to the exhaustion requirement apply only in "extraordinary circumstances," and the petitioner bears the burden of demonstrating the futility of administrative review. *Id.*

After a district court sentences a federal offender, the Attorney General, through the BOP, is responsible for administering the sentence. *United States v. Wilson*, 503 U.S. 329, 335 (1992). The BOP, not the district court, has the statutory authority to decide "*where* a federal sentence will be served, *when* it begins, and, in certain respects, *how long* it will last." *United States v. Aparicio*, 963 F.3d 470, 478 (5th Cir.), *cert. denied*, 141 S. Ct. 435 (2020) (citation omitted); *see also* 18 U.S.C. § 3621; *Wilson*, 503 U.S. at 337 (Attorney General, through BOP, computes amount of § 3585(b) credit after defendant begins serving sentence); *United States v. Dowling*, 962 F.2d 390, 393 (5th Cir. 1992) ("credit awards are to be made by the Attorney General, through the Bureau of Prisons, after sentencing"). Therefore, "[t]he BOP, not the district court, is empowered to calculate 18 U.S.C. § 3585(b) credits after the prisoner begins his sentence." *Aparicio*, 963 F.3d

at 478. Prisoners are afforded administrative review of their credit computation and may seek judicial review of the computation after exhausting administrative remedies with the BOP. *Id.*

### III.   Analysis

Falcetta contends that his § 2241 Petition should be granted because (1) the BOP refused to award him credit for a bachelor's degree he earned while in state custody; (2) the BOP has miscalculated his release date; (3) the BOP's Administrative Remedy Program is unconstitutional; and (3) his conviction under 18 U.S.C. § 2119 should be vacated.

### A. Educational Credits

Falcetta alleges that he earned a Bachelor of Business Administration from Texas A&M University in December 2017, while he was in state custody. After Falcetta begin serving his federal sentence, he asked prison officials at FCI Bastrop to record his degree in the BOP's SENTRY system (an inmate record-keeping system). Prison officials refused, and Falcetta appealed to the BOP. The BOP denied Falcetta's request after determining that "the degree program you claim to have completed does not qualify for inclusion in the SENTRY Education Data System because it was not approved by the Postsecondary Coordinator or completed while being housed at FCI Bastrop," as required by BOP Program Statement 5354.03. Dkt. 1-1 at 18. Falcetta disputes the BOP's reasoning and claims that the failure to add his degree in the SENTRY system and give him good time credit for it violates the First Step Act.

The BOP offers inmates the opportunity under its postsecondary education program to participate in postsecondary education courses which have been determined to be appropriate "in light of the institution's need for discipline, security, and good order." BOP Program Statement No. 5354.03 at 1.[3] An inmate who wishes to participate in a postsecondary education course must

---

[3] https://www.bop.gov/policy/progstat/5354_003.pdf. The Court takes judicial notice of the BOP's program statements referenced in the Petition and posted on the BOP website pursuant to Federal Rule of Evidence

apply through the postsecondary education coordinator at the inmate's facility. *Id.* at 2. If the postsecondary education coordinator determines that the course is appropriate in light of the institution's need for discipline, security, and good order, the inmate may enroll, provided that (1) the inmate meets eligibility requirements for the course which have been set by the course provider; (2) the inmate is responsible for payment of any tuition either through personal funds, community resources, or scholarships available to the inmate; and (3) the unit team determines that the course is appropriate for the inmate's apparent needs. *Id.* at 2-3. Falcetta has failed to provide the Court with any evidence that he complied with BOP Program Statement No. 5354.03, and, therefore, has not shown that the BOP erred in not recording his degree.

Falcetta's argument that he is entitled to good conduct time credit under the First Step Act also fails. In December 2018, Congress passed the First Step Act, which among things, which required the BOP to develop a program to "determine the recidivism risk of each prisoner as part of the intake process, and classify each prisoner as having minimum, low, medium, or high risk for recidivism," which is referred to as the prisoner's "PATTERN score." 18 U.S.C. § 3632(a)(1). The First Step Act also required the BOP to determine the type and amount of evidence-based recidivism reduction programming that is appropriate for each prisoner and assign each prisoner to such programming, including educational programs. *Id.* § 3632(a)(3). In order to encourage inmates to participate in such programs and reduce their recidivism risk level, the First Step Act authorizes the BOP to offer incentives and rewards to inmates for successful participation in such programs. For example, an eligible prisoner who successfully completes such programs will earn good conduct time credits toward their sentence. *Id.* § 3632(d)(4)(A).

---

201(b)(2). *See Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005) (taking judicial notice of agency website); *Cicalese v. Univ. of Tex. Med. Branch*, 456 F. Supp. 3d 859, 871 (S.D. Tex. 2020) ("[G]overnmental websites are proper sources for judicial notice.").

Falcetta is mistaken that he is entitled to receive good conduct time credits toward his sentence under the First Step Act. First, a prisoner "may not earn time credits" for programs completed "prior to the date of enactment of this subchapter." *Id.* § 3632(d)(4)(B). The First Step Act was enacted on December 21, 2018,[4] and Falcetta completed his degree in December 2017. Thus, the Act does not apply to Falcetta's degree. In addition, Falcetta is ineligible to receive credit for his degree because his convictions under 18 U.S.C. § 2119 and 924(c)(1) are listed as disqualifying offenses under the Act. 18 U.S.C. §§ 3632(d)(4)(D)(xxii) & (xxxv). Accordingly, Falcetta is not entitled to good conduct time credit for his degree under the First Step Act.

### B. Projected Release Date

Under 18 U.S.C. § 3624(a), "[a] prisoner shall be released by the Bureau of Prisons on the date of the expiration of the prisoner's term of imprisonment, less any time credited toward the service of the prisoner's sentence." Under § 3624(b)(1), a prisoner "may receive" good conduct time ("GCT") credit "toward the service of the prisoner's sentence, of up to 54 days for each year of the prisoner's sentence imposed by the court, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations."

The BOP calculated Falcetta's projected release date to be August 10, 2027. Dkt. 1-1; Dkt. 14-1 at 5. As stated above, Falcetta received two federal sentences: (1) a 71-month sentence under 18 U.S.C. § 2119, to be served concurrently with his state sentence, and (2) a 120-month sentence under 18 U.S.C. § 924(c)(1), to be served consecutively to his state sentence. Because Falcetta spent more than 71 months in state custody before he was released to federal custody on February 1, 2019, the BOP deemed his 71-month sentence served and discharged as of that date.

---

[4] First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (enacted December 21, 2018).

Thus, only Falcetta's 120-month federal sentence remained to serve, commencing on the day he was received into federal custody. *See* 18 U.S.C. § 3585 ("A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.").

To determine his release date, the BOP followed the following steps. First, the BOP determined the statutory release date ("SRD") for the 120-month term sentence. Dkt. 14-1 at 4. The SRD is calculated by first establishing the Expiration Full Term ("EFT") date of the sentence. Since there was no jail credit to consider with regard to the 120-month term, the BOP determined that the EFT was January 31, 2029 (the date his sentence commenced (February 1, 2019) + 120 months = January 31, 2029). *Id.* at 5. The BOP then reduced the EFT by the amount of GCT that can be earned during the service of the 120-month term under 18 U.S.C. § 3624(b)(1). Thus, the BOP determined his projected release date to be August 10, 2027 (January 31, 2029 – 540 days = August 10, 2027). *Id.* at 5. However, the BOP "cannot simply enter this sentence into the SENTRY computer system as a 120 month sentence. *Id.* Instead, BOP must enter the full 191 month sentence as reflected on the Judgment and Commitment Order." *Id.* This is because "SENTRY is not capable of calculating a partially concurrent, partially consecutive sentence, and instead treats the entire sentence as a concurrent sentence." *Id.* Therefore, the BOP had to manually calculate Falcetta's commencement date so SENTRY would reflect the correct SRD calculated above. *Id.*

The first step in manually calculating the commencement date is to determine the SRD for the 120-month consecutive portion of the federal sentence, which is August 10, 2027 (target date). *Id.* The BOP then had to add the amount of GCT that Falcetta could have earned for both his federal sentences (859 days) to the target date in order to establish a tentative EFT of December 16, 2029.

*Id.* at 6. The commencement date of the 191-month aggregate term then is determined by subtracting the 191-month term from the tentative EFT date. *Id.* Therefore, the BOP determined that a 191-month federal sentence, with the final 120 months operating consecutively to a state sentence satisfied on February 1, 2019, would commence on January 17, 2014.[5] *Id.* Thus, the BOP determined that Falcetta's projected release date is August 10, 2027. *Id.*

Falcetta argues that his projected release date should be September 23, 2026, not August 10, 2027. Falcetta complains that "[t]he BOP's computation punishes him for earning good conduct time credits by adding all GCT earned for the 71 month portion to the end of the 191 month sentence." Dkt. 1 at 2. Falcetta, however, has failed to show how the BOP's calculation of his release date was erroneous. As stated, 18 U.S.C. § 3624 grants the BOP the authority to determine a prisoner's release date, less any time credited against his sentence. In addition, Section 3624(b)(1) provides that the BOP's calculation of GCT credit shall occur "at the end of each year of the prisoner's term of imprisonment." 18 U.S.C. § 3624(b)(1). "Thus, the BOP lacks authority to grant GCT credit until the prisoner has served at least one year of his term of imprisonment." *Schleining v. Thomas*, 642 F.3d 1242, 1247 (9th Cir. 2011); *see also Ford v. Chapman*, 371 F. App'x 513, 514 (5th Cir. 2010) ("Under our case law, 18 U.S.C. § 3624(b) 'makes clear that good time credit must be earned by a prisoner on an annual basis; it is not awarded in advance.'") (quoting *Sample v. Morrison*, 406 F.3d 310, 313 (5th Cir. 2005)). Because Falcetta does not demonstrate how the BOP's calculation was in error, his claim fails. *See Gonzalez v. Nash*, No. A-16-CA-00249-SS, 2016 WL 4735575, at *4 (W.D. Tex. Sept. 12, 2016) (denying § 2241 petition where petitioner failed to show how the BOP's calculated projected release date was in error).

---

[5] In this calculation, one day was added to the tentative EFT before subtracting the length of the term. This is done to include the tentative EFT of January 16, 2027 in the 191-month term and avoid early commencement of the term by one day. Dkt. 14-1 at 6.

### C.  BOP Administrative Remedy Program

Although Falcetta asserts that he exhausted his administrative remedies before filing this lawsuit, he nevertheless argues that the BOP's Administrative Remedy Program ("ARP") is unconstitutional because "the BOP has no interest in resolving a claim in the inmate's favor." Dkt. 1 at 4.

A petitioner must first exhaust his administrative remedies through the BOP before filing a § 2241 petition. *United States v. Gabor*, 905 F.2d 76, 78 n.2 (5th Cir. 1990). The ARP provides a process "to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10 (2022). Initially, a prisoner must attempt to informally resolve the complaint with staff. 28 C.F.R. § 542.13(a). If informal attempts are unsuccessful, the prisoner must submit a Request for Administrative Remedy to the Warden. 28 C.F.R. § 542.14. If the prisoner is not satisfied with the Warden's response, he may appeal to the Regional Director. 28 C.F.R. § 542.15. If still unsatisfied, the prisoner may appeal to the Office of General Counsel. *Id.* Courts have found that "the BOP Administrative Remedy Program is an adequate 'means through which allegedly unconstitutional actions . . . can be brought to the attention of the BOP and prevented from recurring.'" *Silva v. United States*, 45 F.4th 1134, 1141 (10th Cir. 2022) (citing *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001)).

Other than his conclusory allegation that the BOP has no interest in resolving a claim in the inmate's favor, Falcetta does not identify how the ARP was unfair or violates his constitutional rights. Moreover, "prisoners do not have a federally protected liberty interest in having their grievances resolved to their satisfaction." *Hawes v. Stephens*, 964 F.3d 412, 418 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 1465 (2021). Therefore, Falcetta's claim fails.

### D. Collateral Attack on Conviction

Finally, Falcetta argues that his conviction under 18 U.S.C. § 2119 should be vacated because the statute violates the Commerce Clause. This claim is outside the proper scope of a § 2241 petition. "28 U.S.C. § 2255, not § 2241, is the proper means of attacking errors that occurred during or before sentencing." *Ojo v. INS*, 106 F.3d 680, 683 (5th Cir. 1997). As noted, § 2241 is used by prisoners to attack the manner in which a sentence is carried out or the prison authorities' determination of its duration. *Pack*, 218 F.3d at 451. "A petition for a writ of habeas corpus pursuant to § 2241 is not a substitute for a motion under § 2255." *Id.* at 452. Thus, a § 2241 petition seeking to challenge the validity of a federal sentence must either be dismissed or construed as a § 2255 motion. *Id.*

This Court lacks jurisdiction to construe the instant petition as a § 2255 petition because the Fifth Circuit has not granted Falcetta authorization to file a successive § 2255 petition. *See Hooker v. Sivley*, 187 F.3d 680, 681-82 (5th Cir. 1999) (holding that district court lacked jurisdiction to construe a § 2241 petition as a § 2255 motion because petitioner had not received prior authorization from the court of appeals to file a successive § 2255 motion). In addition, a § 2255 motion must be filed in the court in which the petitioner was convicted and sentenced, which in this case would be the United States District Court for Eastern District of Texas. *See Benson v. Justice*, 511 F.3d 486, 487 (5th Cir. 2007) (finding that district court did not have jurisdiction to construe petition as a § 2255 motion where prisoner was sentenced in a different district); *Ojo*, 106 F.3d at 683 (noting that only sentencing court has jurisdiction to address § 2255 motion). For these reasons, the Court lacks jurisdiction to construe Falcetta's § 2241 motion as a motion under § 2255.

The Court nevertheless may address Falcetta's claim through the "savings clause" provision of § 2255 if he can demonstrate that § 2255 otherwise provides him with an "inadequate" or

"ineffective" remedy. *Benson*, 511 F.3d at 487. A petitioner seeking relief under the § 2255 savings clause must demonstrate that (1) his claim is based on a retroactively applicable Supreme Court decision; (2) the Supreme Court decision establishes that he was "actually innocent" of the charges against him because the decision decriminalized the conduct for which he was convicted; and (3) his claim would have been foreclosed by existing circuit precedent had he raised it at trial, on direct appeal, or in his original § 2255 petition. *Reyes-Requena v. United States*, 243 F.3d 893, 904 (5th Cir. 2001). "[T]he core idea is that the petitioner may have been imprisoned for conduct that was not prohibited by law." *Id.* at 903. The petitioner bears the burden of demonstrating that "the remedy by motion [under § 2255] is inadequate or ineffective to test the legality of his detention." Section 2255(e); *see also Pack*, 218 F.3d at 452.

Falcetta has not sustained his burden to demonstrate that § 2255 is an "inadequate" or "ineffective" remedy. The Fifth Circuit has held that "a prior unsuccessful § 2255 motion, or the inability to meet [the Antiterrorism and Effective Death Penalty Act of 1996]'s 'second or successive' requirement, does not make § 2255 inadequate or ineffective." *Tolliver v. Dobre*, 211 F.3d 876, 878 (5th Cir. 2000).

> A ruling that the section 2255 remedy was inadequate or ineffective, such that a petitioner could invoke section 2241, simply because the petitioner's prior section 2255 motion was unsuccessful, or barred, or because he could not file another motion, would render those procedural requirements a nullity and defy Congress's clear attempt to limit successive habeas petitions.

*Pack*, at 453.

Falcetta does not argue that there is a recent retroactively applicable Supreme Court decision establishing that he was "actually innocent" of the charges against him because the decision decriminalized the conduct for which he was convicted. Rather, Falcetta simply attempts to

circumvent the limitations on filing successive § 2255 motions. Accordingly, this claim should be dismissed for lack of jurisdiction.

## IV.   Order and Recommendation

Petitioner's Motion to Amend Filing (Dkt. 18) is **GRANTED**.

Because Falcetta has failed to show that he is in custody in violation of the Constitution or laws or treaties of the United States, the undersigned Magistrate Judge **RECOMMENDS** that the District Court **DENY** Plaintiff's Petition for Habeas Corpus under 28 U.S.C. § 2241 (Dkt. 1). It is recommended that the District Court **DISMISS** Falcetta's collateral attack on his conviction for lack of jurisdiction and **DENY** all other claims on their merits.

## V.   Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on November 2, 2022.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE